1
2
3
4
5
6          UNITED STATES DISTRICT COURT

7          NORTHERN DISTRICT OF CALIFORNIA

8
                                              No. C 09-05318 MHP
9    MARK ENNIS
              Plaintiff,
10                                            **MEMORANDUM & ORDER**
          v.
11                                            **Re:** Defendant Carson & Barnes Circus'
     CITY OF DALY CITY, et. al.,              Motion to Dismiss Second Amended
12            Defendant(s),                   Complaint
     _____/
13

14          On November 9, 2009, plaintiff Mark Ennis filed this action against the City of Daly City

15   ("City"), Daly City Police Chief McLane ("McLane"), Daly City Police Officer Kranz ("Kranz"),

16   Daly City Police Officer Andrade ("Andrade") and Daly City Police Sergeant O'Rourke

17   ("O'Rourke") alleging violations of civil rights under both 42 U.S.C. § 1983 and state law.  On

18   January 22, 2010, plaintiff filed a First Amended Complaint, naming as an additional City

19   defendant, Daly City Police Sergeant Keyes ("Keyes").  On June 22, 2010, the court granted

20   plaintiff leave to amend his FAC, (Docket No. 124 (Memorandum and Order)), and on June 30,

21   2010, plaintiff filed a Second Amended Complaint naming as additional defendants the 1-A

22   Agricultural Association ("the Association"), which operates the Cow Palace in Daly City, and three

23   of its employees; the Carson and Barnes Circus ("Carson") and three of its employees; and Daly

24   City Police Officer Wollman. Docket No. 25 (Second Amended Complaint ("SAC")). Now before

25   the court is defendant Carson's motion to dismiss the SAC as it applies to Carson.  Having

26   considered the parties' submissions and arguments, the court enters the following memoranda.

27
28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    BACKGROUND

2         Plaintiff is a member of Citizens for Cruelty-Free Entertainment ("CCFE"), a San Francisco

3    Bay Area organization whose purpose is to promote the humane treatment of animals and to educate

4    the public about the abuse and mistreatment of animals in circuses. SAC ¶ 20.  In order to promote

5    his cause, plaintiff engages in speech activity, including attending circuses where he holds signs and

6    banners and distributes leaflets about the condition and treatment of circus animals. *Id.*  Plaintiff also

7    videotapes circus animals as a means of educating the public about and publicizing the alleged abuse

8    and mistreatment of circus animals. *Id.*  Defendant Carson is a family-owned traveling circus,

9    founded in 1937. Docket No. 35 (Carson's Motion to Dismiss Second Amended Complaint

10   ("Motion")) at 3. Carson travels across the country between the months of March and November

11   putting on circus shows that feature performers and animals. *Id.*

12        On September 12, 2008, plaintiff and other members of CCFE attended the Carson circus at

13   the Cow Palace in order to videotape Carson's animals. SAC ¶ 24.  Plaintiff was videotaping the

14   animals located in an area that was barricaded when he and his group were approached by Carson

15   staff who apparently objected to plaintiff's presence.  SAC ¶ 26.  A City police officer was

16   summoned to the scene, and plaintiff listened in while CCFE member, Deniz Bolbol ("Bolbol"), and

17   the officer discussed whether Carson could legally barricade approximately three-quarters of the

18   parking lot surrounding Carson's big top tent. *Id.*  As plaintiff and Bolbol sought to videotape the

19   conditions of the animals in the area beyond the barricade, Bolbol argued that Carson's placement

20   and enforcement of the barricade was unconstitutional as applied to their attempts to engage in

21   speech activity. *Id.*  City police supervisor, Officer Griggs ("Griggs"), was called to the scene. *Id.*

22   After discussions with Carson officials, including Gustav Bello-Parra ("Parra-Bello"), Cow Palace

23   official Diana Colvin ("Colvin"), plaintiff and Bolbol, and after consulting via cell phone with City

24   watch commander Gamez, Griggs allegedly informed Carson officials and Cow Palace officials that

25   the placement of the barricades was unconstitutional; that for the purposes of engaging in their

26   speech activities, the activists were allowed to access the entire parking lot with the exception of

27   areas that required a ticket for admission and areas surrounded by metal barricades; that the

28

2

barricades had to be repositioned to encircle the tent, leaving accessible a greater portion of the parking lot for public access; and that plaintiff and his fellow activists were permitted to go beyond the barricades to engage in their speech activities. *Id.* Carson employees moved the barricades accordingly, and for the remainder of the evening plaintiff and his fellow activists went beyond the barricades to videotape Carson's animals. SAC ¶ 27.

On September 13, 2008, plaintiff, Bolbol and others in plaintiff's group returned to the Cow Palace to continue to engage in speech activity at the circus. SAC ¶ 29. Plaintiff observed that the barricades were once again blocking off access to three-quarters of the parking lot in contravention of Griggs' alleged directives from the previous day. *Id.* Ignoring the placement of the barricades, plaintiff and Bolbol went beyond them to videotape Carson's animals. SAC ¶ 30. Carson employees allegedly attempted to interfere with plaintiff's speech activity, before Officer Kranz appeared and "rushed" plaintiff, engaged plaintiff in a physical altercation and subsequently broke plaintiff's camera. *Id.* Plaintiff escaped from the confrontation with Kranz and next heard Parra-Bello and Colvin instruct Carson employees to assault plaintiff. SAC ¶ 32. Fearing for his safety, plaintiff ran toward an area where others in his group were located. SAC ¶ 33. Carson employees allegedly chased plaintiff as he ran toward his group, caught plaintiff and physically attacked him causing further damage to his video camera. *Id.* Pursuant to a citizen's arrest, plaintiff was subsequently taken into custody for trespass, resisting arrest and assault with a deadly weapon. SAC ¶ 34.

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss should be granted if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 569 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Iqbal*, 129 S.Ct. at 1950; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

DISCUSSION

Defendant Carson now moves to dismiss all of the claims that plaintiff alleges in his complaint.  The court addresses each claim for relief in turn.

I.    Count 1 - Section 1983 Claims

Carson argues that plaintiff has not met his burden of pleading facts from which a section 1983 claim may lie against a private party.  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).  "[A section 1983] claim may lie against a private party who 'is a willful participant in joint action with the State or its agents.  Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.'" *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)).  "A private party is liable under this theory, however, only if its particular actions are 'inextricably intertwined' with those of the government." *Brunette v. Humane Society of Ventura County*, 294 F.3d 1205, 1211 (9th. Cir. 2002) (citing *Mathis v. Pac. Gas & Elec.*

United States District Court

For the Northern District of California

4

United States District Court

For the Northern District of California

*Co.*, 75 F.3d 498, 503 (9th Cir. 1996).  "[A] bare allegation of . . . joint action will not overcome a motion to dismiss; the plaintiff must allege facts tending to show that [private defendants] acted under color of state law or authority." *DeGrassi*, 207 F.3d at 647 (quoting *Sykes v. State of Cal. (Dep't of Motor Vehicles)*, 497 F.2d 197, 202 (9th Cir. 1974)).

Plaintiff alleges that Carson engaged in joint action with the City and Association defendants to deprive him of his First Amendment right to free speech, his Fourth Amendment rights against unlawful search, seizure and excessive force and his Fourteenth Amendment right to equal protection.   In his opposition papers, plaintiff does not dispute that he does not plausibly set forth facts supporting any Fourteenth Amendment-based claims.  Accordingly, defendant's motion as to plaintiff's Fourteenth Amendment-based claims is GRANTED.  The court addresses the remaining claims in turn.

A.   First Amendment Allegations

Plaintiff alleges joint action between Carson and state defendants to deprive him of his free speech rights.

> "Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights. The test focuses on whether the state has so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity.  A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (internal citations and quotation marks omitted).

Paragraph 29 of the Second Amended Complaint states, "The decision to keep the configuration of barricades which Griggs had advised needed to be changed to protect plaintiff's first amendment rights was made by defendants Eric Wollman, acting on behalf of the Daly City police department, Walter Haub and Diana Colvin, acting on behalf of [the Cow Palace] and Gustav Parra-Bello, acting on behalf of Carson & Barnes Circus." SAC ¶ 29.  Plaintiff pleads no other facts to support his claim of conspiracy or joint action as to the denial of his First Amendment free speech rights.  Apart from this bare, conclusory assertion that the placement of the barricades on September 13, 2008 must have been the result of a conspiracy between Carson, City police officers and Cow

United States District Court

For the Northern District of California

1    Palace officials, Ennis does not plausibly allege beyond a speculative level any facts that tend to

2    show a conspiracy here.  For example, Ennis does not plead facts showing that Carson officials or

3    employees conferred ahead of time with the City officers or with the Cow Palace officials in order to

4    deprive him of his right to engage in speech activity at the circus. *See Franklin*, 312 F.3d at 445 ("To

5    be liable as a co-conspirator, a private individual must share with the public entity the goal of

6    violating a plaintiff's constitutional rights.")

7            Nor does Ennis set forth facts showing any measure of interdependence between Carson and

8    the City officers and Association officials or that Carson's actions were inextricably intertwined

9    with those of Officer Wollman or Colvin.  For example, Ennis does not allege any facts suggesting

10   beyond mere possibility that Carson and the state defendants jointly conceived of the reconfiguration

11   of the barricades or jointly executed the reconfiguration of the barricades on September 13, 2008 in

12   order to deny plaintiff's constitutional free speech rights.  *See Brunette v. Humane Society of*

13   *Ventura County*, 294 F.3d 1205, 1212 (9th Cir. 2002) (finding no joint action between a private

14   party and the state defendant where the facts set forth did not show that the alleged state actions

15   were "directed by or jointly conceived, facilitated or performed by" the state defendants.)  Rather,

16   Ennis argues that "scheming began" after Griggs directed that the placement of the barricades on

17   September 12, 2008. Docket No. 38 (Plaintiff's Opposition ("Opp.")) at 4.  Yet Ennis pleads

18   insufficient facts to show that Carson indeed schemed with either Cow Palace officials or City police

19   officers in the placement of the barricades on September 13, 2008.  Indeed, from plaintiff's very

20   limited assertion of facts related to any alleged joint action or alleged conspiracy between Carson

21   and the City and/or the Cow Palace, the court is unable "to draw the reasonable inference" that joint

22   action was involved in the placement of the barricades and the subsequent alleged violation of

23   plaintiff's constitutional right to free speech. *Iqbal*, 129 S.Ct. at 1950 (2009).  Accordingly,

24   defendant's motion as to this claim is GRANTED with leave to amend.

25           B.      Fourth Amendment Claims

26           Plaintiff argues that Carson conspired with members of the Daly City Police Department to

27   violate his Fourth Amendment rights against unlawful search, seizure and the use of excessive force.

28

Specifically, plaintiff alleges that Carson manager, Parra-Bello, agreed to sign a false citizen's arrest form placing plaintiff under arrest although plaintiff's arrest was in fact effectuated by Kranz and O'Rourke. Thus, plaintiff contends that Carson participated in "trumping up false charges of trespass and resisting arrest." Opp. at 4.

Plaintiff's SAC, however, does not set forth facts that show that Carson conspired with Kranz and O'Rourke in abridging plaintiff's rights. The SAC alleges that Parra-Bello signed the citizen's arrest form, making false statements therein as to plaintiff's alleged illegal activity, which in turn facilitated plaintiff's detention. SAC ¶ 34. These facts, however, do not plausibly support a claim of conspiracy between Carson and the City police officers to deny plaintiff's rights against unlawful seizure. For example, plaintiff does not allege that Parra-Bello conferred with Kranz and Sergeant O'Rourke to cook up the scheme to arrest plaintiff pursuant to a citizen's arrest. Rather, plaintiff alleges merely that "the arrest was ordered by Sergeant O'Rourke at the behest of [O]fficer Kranz," thus setting forth facts that show there was no meeting of the minds ex ante between the officers and Parra-Bello. *Id.*; *see United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (quoting *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) ("To prove a conspiracy between the state and private parties under section 1983, the [plaintiff] must show an agreement or meeting of the minds to violate constitutional rights.")) Parra-Bello's alleged agreement to sign the citizen's arrest form does not support the inference that there was a conspiracy to deprive plaintiff of his Fourth Amendment right against unlawful seizure.

Nor do the proffered facts support an inference that the actions of the officers and Parra-Bello were inextricably intertwined in that regard. Plaintiff's bare allegation that, "Gustav Parra-Bello cooperated with Kranz in signing false citizen's arrest forms purportedly to carry out the arrests of [p]laintiff and Bolbol for trespassing and resisting arrest," does little to plausibly suggest the level of interaction required to meet the standard of inextricably intertwined joint action. *See Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) ("Joint action . . . requires a substantial degree of cooperative action.") Moreover, plaintiff alleges no facts that plausibly allege that Carson

7

United States District Court

For the Northern District of California

1   conspired in any way in or cooperated in a substantial degree with Kranz's alleged use of excessive

2   force.

3         Similarly, plaintiff's SAC fails to set forth facts that plausibly show that Carson conspired

4   with the Cow Palace officials to abridge plaintiff's federal constitutional rights.  With regard to the

5   violation of plaintiff's speech rights, as discussed above plaintiff merely asserts that Cow Palace

6   official Colvin participated in the unconstitutional placement of the barricades surrounding Carson's

7   tent.  SAC ¶ 29.  Plaintiff alleges no facts supporting an inference that Carson and the Cow Palace

8   conspired to violate plaintiff's speech rights or that there was a substantial degree of cooperative

9   action between the two entities to deprive plaintiff of his speech rights.  Moreover, plaintiff's bare

10  assertion that Colvin instructed Carson employees to assault plaintiff after plaintiff's interaction with

11  officer Kranz does not plausibly allege, beyond a speculative level, joint action sufficient to support

12  plaintiff's section 1983 claims against Carson based on the violation of any Fourth Amendment

13  rights.  Accordingly, defendant's motion to dismiss these claims is GRANTED with leave to amend.

14  II.    <u>Count 2 - Cal. Civ. Code § 52.1</u>

15        Plaintiff alleges that Carson violated Cal. Civ. Code § 52.1.  This section proscribes

16  interference "by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or

17  coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the

18  Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this

19  state."  "The word 'interferes' as used in [section 52.1] means 'violates.'" *Austin B. v. Escondido*

20  *Union School Dist.*, 149 Cal.App.4th 860, 883 (2007) (citing *Jones v. Kmart Corp.*, 17 Cal.4th 329,

21  334 (1998)).  "The essence of a [section 52.1]claim is that the defendant, by the specified improper

22  means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing

23  something he or she had the right to do under the law or to force the plaintiff to do something that he

24  or she was not required to do under the law." *Id.*  Section 52.1 applies with equal force to persons

25  who do not act under color of law, and a violation requires "an attempted or completed act of

26  interference with a legal right, accompanied by a form of coercion." *Id.*  "[I]n pursuing relief for []

27  constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with

28

United States District Court

For the Northern District of California

1   discriminatory animus or intent, so long as those acts were accompanied by the requisite threats,

2   intimidation, or coercion." *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 843 (2004).

3           Plaintiff alleges that because the parking lot of the Cow Palace was a public forum for free

4   speech purposes, he had both a federal and state constitutional right to engage in free speech. SAC ¶

5   28.  Thus plaintiff plausibly alleges the violation of a constitutional right.  Plaintiff next alleges that

6   Carson interfered with his federal and state constitutional speech rights by placing barricades in

7   order to prevent speech activity in three-quarters of the parking lot. SAC ¶ 29.  Plaintiff further

8   alleges that Carson employees taunted and harassed plaintiff and his fellow activists in order to deter

9   and interfere with their speech activity behind the barricade, SAC ¶ 30, and that after calling the

10  police to remove plaintiff for trespass, Carson officials urged employees to chase and attack

11  plaintiff. SAC ¶ 32-33.  Plaintiff asserts that Carson employees, including Carlos Olmos and Jose

12  Vargas Diaz, subsequently chased plaintiff and assaulted him, breaking his video camera in the

13  process. SAC ¶ 33.  Given these facts, the court finds that plaintiff has set forth sufficient facts to

14  raise a plausible claim under section 52.1 based on a violation of free speech rights.  The facts,

15  viewed in the light most favorable to plaintiff, support a reasonable inference that Carson employees

16  attempted by threats and intimidation, namely harassment and physical attack, to prevent plaintiff

17  from engaging in his speech activity.  Accordingly, defendant's motion to dismiss this claim based

18  on violations of speech rights is DENIED.

19          Plaintiff does not, however, set forth facts that support a section 52.1 violation based on

20  Carson's alleged role in City officer's violation of his Fourth Amendment rights.  Plaintiff charges

21  that Carson interfered with his right against unlawful search and seizure by facilitating his arrest via

22  a citizen's arrest and by ordering Carson employees to chase and attack plaintiff after his

23  confrontation with City officer Franz.  Thus, plaintiff argues that Carson employees are liable under

24  section 52.1 based on search and seizure violations.  Plaintiff's assertion alone, however, that Carson

25  employees assaulted or seized him does not support an inference that Carson interfered by threats,

26  intimidation or coercion with his Fourth Amendment rights.  The Fourth Amendment only

27  proscribes government action.  *See Jones*, 17 Cal.4th at 332 (citing *Skinner v. Railway Labor*

28

9

**United States District Court**
For the Northern District of California

*Executives' Assn.*, 489 U.S. 602, 614 (1989).  Accordingly, in order to show that Carson violated section 52.1 based on Fourth Amendment rights, plaintiff must plead facts supporting an inference that Carson interfered by threats, intimidation or coercion with plaintiff's assertion of his Fourth Amendment rights as against the City officers. *Id.* at 334-35.[1]

In *Jones*, the plaintiff, who was pursued, seized, and searched by Kmart employees who mistakenly suspected the plaintiff of shoplifting, sued under section 52.1 based on a violation of his search and seizure rights.  The California Supreme Court held that because federal and state unlawful search and seizure law applies to government action, in order to raise a section 52.1 claim on this basis plaintiff had to plead facts alleging that defendants interfered with this right, not facts that defendants themselves executed an illegal search or seizure. *Id.*  Here, plaintiff's complaint is deficient in this regard.  Plaintiff does not set forth facts plausibly showing conduct by Carson employees that interfered with his right to assert the Fourth Amendment protections as against the Daly City Police Department.[2]  Accordingly, to the extent that plaintiff's section 52.1 claims are based on a violation of the Fourth Amendment or its state constitutional cognate,[3] defendant's motion to dismiss is GRANTED with leave to amend.

III.     Count 3 - Cal. Civ. Code § 51.7

Section 51.7 provides: "All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation . . ."  "The obvious purpose of [section 51.7] is to declare unlawful, and civilly actionable, any acts of violence or intimidation by threats of violence directed against any individual because of his actual or perceived membership in a minority or similarly protected class." *Venegas*, 32 Cal.4th at 845 (Baxter, J. concurring).  Although plaintiff alleges that Carson employees attacked and assaulted him because of his animal-rights activism, plaintiff does not plead any facts supporting an inference that the Carson employees' attack on him was based on his affiliation with animal-rights activism or on their perception of his affiliation. *See Austin B.*, 149 Cal.App.4th at 881 (granting a nonsuit on a section 51.7 claim where disabled children who were abused by defendant could not show that defendant committed the alleged violent actions "because

10

United States District Court

For the Northern District of California

1   he was biased against or had an animus against disabled children.")  Here, although plaintiff

2   specifically alleges that City officers failed to conduct a reasonable investigation into allegations that

3   Carson employees had assaulted plaintiff because of "bias against the [p]laintiff based on

4   [p]laintiff's political views and perceived association with animal rights activists," SAC ¶ 36,

5   plaintiff does not plead any facts that support an inference that Carson employees similarly acted.

6   Accordingly, defendant's motion to dismiss this claim is GRANTED with leave to amend.

7

8   CONCLUSION

9        Defendant's motion to dismiss is GRANTED in part and DENIED in part, without prejudice.

10  Plaintiff shall file a Third Amended Complaint (TAC) pleading sufficient facts to support plaintiff's

11  claims within thirty (30) days of the date of this order.  Defendant shall file an Answer or otherwise

12  respond within thirty (30) days of the date that plaintiff files his TAC.

13       IT IS SO ORDERED.

14

15  Dated:  November 22, 2010                                    _____

16                                                              MARILYN HALL PATEL
                                                                United States District Court Judge
17                                                              Northern District of California

18

19

20

21

22

23

24

25

26

27

28

11

1

2

3

## ENDNOTES

1. "Plaintiffs in effect pleaded interference with the Fourth Amendment to the United States Constitution and article I, section 13, of the California Constitution. Yet they only presented evidence that defendants themselves conducted an aggressive search and seizure. However rough defendants' treatment of [plaintiff] may have been, it did not interfere with his ability to assert his rights under those constitutional guaranties. Those rights were not put in jeopardy in this dispute, as they might have been if defendants had called the police and then coercively interfered with [plaintiff's] Fourth Amendment rights when he attempted to exercise them against the police. Because plaintiffs presented no evidence that defendants interfered with Jones's constitutional rights as pleaded, they were not entitled to the instructions the court gave under section 52.1."

2. In *Jones*, the California Supreme Court provides the following example or facts that could allege a section 52.1 violation based on a Fourth Amendment violation:

> "For example, if a burglary victim, suspecting that his stolen property lay hidden in a nearby house, stood at the door with the police and threatened to injure the homeowner if she did not change her mind and consent to an official and warrantless search of her premises, the homeowner might, under section 52.1, be able to sue her neighbor for interfering with her Fourth Amendment rights, assuming for purposes of this example that the Fourth Amendment protected her against warrantless searches by the state without her consent under the circumstances." *Jones*, 17 Cal.App.4th at 334.

3. Art. 1, Section 13 of the state constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California